**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AHMED AL ASADI,<br><br>              Plaintiff,<br><br>     v.<br><br>SECRETARY OF ARMY, DEFENSE LANGUAGE INSTITUTE, FOREIGN LANGUAGE CENTER DLIFLC, AGENCY,<br><br>              Defendant. | Case No.  22-cv-02988-BLF<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF No. 25] |

Plaintiff Ahmed Al Asadi brings this brings this action under Title VII of the Civil Rights Act of 1964 against the Secretary of the Army for alleged employment discrimination, retaliation, and creation of a hostile work environment.  Pending before the Court is Defendant's Motion for Summary Judgment or Summary Adjudication.  Mot., ECF No. 25; Reply, ECF No. 34.  Mr. Asadi opposes the motion.  Opp'n, ECF No. 33.

The Court has found this motion suitable for disposition without oral argument.  *See* ECF No. 35.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court GRANTS Defendant's motion in its entirety for the following reasons.

## I.  BACKGROUND

### A.  Plaintiff's Position and Chain of Command

Plaintiff Ahmed Al Asadi is of Iraqi national origin.  Asadi Decl. Ex. C ("Asadi EEO Decl. (July 30, 2019)"), at p.1, ECF No. 33-3.  He joined the Defense Language Institute in 2009 as a language teacher.  Scharf Decl. Ex. FFF ("Asadi Dep.") 20:7-11, ECF No. 25-3.  In 2015, he was selected to become an Educational Technology Specialist and has held that role ever since.  *Id.* at 20:12-18.  Mr. Asadi is in charge of everything related to technology at the institute, including the

institute's networks, servers, accounts, and hardware.  *Id.* at 21:10-18.

From September 2017 to March 2020 Mr. Asadi's first-line supervisor was Dr. Atousa Mirzaei, a white woman of Iranian national origin.  Scharf Decl. Ex. D ("Mirzaei Decl."), at pp.1-2, ECF No. 25-2.  His second-line supervisor was Dr. Viktoriya Shevchenko, a white woman of Ukrainian national origin.  Scharf Decl. Ex. E ("Shevchenko Decl."), at pp.1-2, ECF No. 25-2.  Both Dr. Mirzaei and Dr. Shevchenko reported to Dr. Hiam Kanbar, a white woman of Lebanese national origin.  Scharf Decl. Ex. F ("Kanbar Decl."), at pp. 2, ECF No. 25-2; Mirzaei Decl., at p.1; Shevchenko Decl., at p.2.

### B.   The Incident

The events giving rise to this case began on July 13, 2018, with a disagreement at a meeting.  The meeting was chaired by Assistant Provost Dr. Parandeh Kia.  Scharf Decl. Ex. G ("Koayess Statement"), at DEF1080, ECF No. 25-2.  Mr. Asadi and two other employees, Thomas Adams and Amany Nasser, were to present a method for organizing and presenting files on a school share drive.  *See* Asadi Decl. Ex. B ("Asadi Statement"), at p.254, ECF No. 33-3; *see also* Scharf Decl. Ex. I ("Noisette Mem.") ¶ 2, ECF No. 25-2.  Mr. Adams was the main presenter. Asadi Statement, at p.245; Noisette Mem. ¶ 2; Asadi Decl. Ex. D ("Adams Decl."), ECF No. 33-3.

What happened after the meeting began is disputed although largely not material to this case.  According to Mr. Asadi, two attendees, George Yousef and Pascale Koayess, repeatedly interrupted Mr. Adams.  Asadi Statement, at p.254.  Mr. Adams corroborates that Mr. Yousef and Ms. Koayess interrupted him.  Asadi Decl. Ex. D ("Adams Statement"), ECF No. 33-3.  Mr. Asadi states that he eventually responded to one of Mr. Yousef's interruptions by politely telling Mr. Yousef to let Mr. Adams finish.  Asadi Statement, at p.254.  According to Mr. Asadi, Ms. Koayess interrupted Mr. Adams a few minutes later to complain about the name of a word file in the materials.  *Id.*  Mr. Asadi contends that he responded by explaining the file name and then Ms. Koayess "stood up and glared at [him] and yelled, 'you are talking with me in a rude way.'"  *Id.* According to Mr. Asadi, he replied by stating, "Be polite when you talk to me."  *Id.*

Other attendees tell a different version of the story.  According to Ms. Koayess, during the presentation, Mr. Yousef began to give feedback and Mr. Asadi seemed unhappy with the

interruption.  Koayess Statement ¶ 1.  Ms. Koayess states that the meeting got tense, and Mr. Asadi asked Mr. Yousef to let Mr. Adams proceed.  *Id.*  Dr. Parandeh describes Mr. Asadi's tone during this exchange as "inappropriate."  Scharf Decl. Ex. H ("Parandeh Email"), ECF No. 25-2.  Ms. Koayess states that during the next section of the presentation she tried to ask about naming conventions used in the presentation.  Koayess Statement ¶ 2.  According to Ms. Koayess, Mr. Asadi became visibly annoyed and then started yelling and pointing his index finger at her.  *Id.*

While the parties disagree about who was yelling, all agree that the disagreement devolved into a loud altercation.  Ms. Nasser reports that "the discussion escalated into a yelling match." Asadi Decl. Ex. E ("Nasser Statement"), at 3-4, ECF No. 33-3.

Dr. Kanbar, who was not at the meeting, states that she heard loud, angry yelling from her office.  Asadi Decl. Ex. DDD ("Kanbar Dep.") 56:1-4, ECF No. 33-3.  Hearing the yelling, she went to the conference room where the meeting was held and observed that "there was an argument going on."  *Id.* at 56:3-7.  According to Dr. Kanbar, when she entered the meeting, everyone stopped yelling except for Mr. Asadi.  *Id.* at 56:8-9.  Dr. Parandeh states that she was trying to get Mr. Asadi to stop yelling over her when Dr. Kanbar entered the room.  Parandeh Email.  Mr. Asadi disputes that he ever raised his voice.  *See* Opp'n 3 (citing Adams Decl.).

**C.    Ms. Koayess's Memorandum**

On July 17, 2018, Ms. Koayess emailed a memorandum documenting her summary of the Incident to her first-line supervisor, Dr. Deanna Tovar.  *See* Koayess Statement; *see also* Scharf Decl. Ex. KKK ("Tovar Decl.") ¶ 3, ECF No. 25-3.  Dr. Tovar forwarded the memorandum to Dr. Shevchenko.  *See* Koayess Statement.  Ms. Koayess stated that Mr. Asadi had made her feel unsafe and that she feared he may hit her.  *Id.* ¶ 8.

**D.    Informal Inquiry and Recommendations**

After the Incident, an Investigating Officer, First Lieutenant Lisette Noisette, conducted an "informal inquiry."  *See* Noisette Mem.  Lt. Noisette listed her findings and recommendations in a memorandum dated August 1, 2018.  *See id.*  Lt. Noisette recommended the following:

> Based on my findings, I do not recommend to initiate a formal investigation (AR 15-6) at this time. I do recommend that both Mr. Al-Asadi and Ms. Koayess apologize to each other in person to avoid

> any chance of resentment that may resurface in the future. I also recommend that both Mr. Al-Asadi and Ms. Koayess receive verbal counseling from their supervisors on how to manage disputes and misunderstandings in the workplace. Finally, I recommend that all participating members of future projects receive an explanation of their specific roles before starting any collaboration.

Noisette Mem. ¶ 7.

On August 5, 2018, Dr. Kanbar forwarded these recommendations to Mr. Asadi's and Ms. Koayess's respective supervisors, Dr. Shevchenko and Dr. Deanna Tovar.  *See* Scharf Decl. Ex. J ("Kanbar Email"), ECF No. 25-2.  Dr. Shevchenko forwarded the email to Dr. Mirzaie.  *See id.*

**E.    Counseling**

On August 24, 2018, Dr. Mirzaei and Mr. Asadi met in Dr. Mirzaei's office to discuss the Incident.  *See* Scharf Decl. Ex. K ("Counseling Mem."), ECF No. 25-2; *see also See* Scharf Decl. Ex. EEE ("Mirzaei Dep.") 87:8-16; *see also* Opp'n 6.  Dr. Mirzaei presented Mr. Asadi with a memorandum with the subject line "Counseling."  Mirzaei Dep. 87:8-16; *see also* Counseling Mem.; Opp'n 6.  According to Dr. Mirzaei, the memorandum was a "Memorandum for Record" that she drafted to keep a record of what was discussed at the verbal counseling session and to give focus to the discussion.  Mirzaei Dep. 86:14-88:16.  In the memorandum, Dr. Mirzaei states, "Based on my review of this matter, I find that this informal counseling statement is the minimum action necessary to bring awareness to your unacceptable conduct/behavior in the workplace that cannot be condoned or tolerated."  Counseling Mem. ¶ 1.

On September 17, 2018, Mr. Asadi submitted two letters to Dr. Mirzaei, one providing a rebuttal to the Counseling Memorandum and one providing a written report of the Incident.  Asadi Statement.  In his rebuttal, Mr. Asadi requested that the Counseling Memorandum be removed from his file.  Asadi Statement, at p.256.

Three days later, Dr. Mirzaei responded that she had reviewed the rebuttal and determined that the Counseling Memorandum would not be rescinded but that she would attach Mr. Asadi's rebuttal to the Counseling Memorandum for the record.  Scharf Decl. Ex. M ("Mirzaei Rebuttal Response Email"), ECF No. 25-2.  Dr. Mirzaei also stated that the August 24, 2018, meeting and Counseling Memorandum was "informal counseling that is not considered formal discipline."  *Id.*

Later that same day, Mr. Asadi wrote to Dr. Shevchenko requesting that Dr. Shevchenko

remove the Counseling Memorandum from his file.  Scharf Decl. Ex. N ("Shevchenko-Asadi Counseling Mem. Email"), ECF No. 25-2.  Dr. Shevchenko responded that the Counseling Memorandum would remain in Mr. Asadi's file for a year.  *Id.*

### F.    2018 Midpoint Review

In October 2018, Dr. Mirzaei sent Mr. Asadi an email entitled "Mid point review- Mr. Al Asadi."  Scharf Decl. Ex. O ("Mirzae-Asadi Midpoint Review Email"), ECF No. 25-3.  The email provided a "summary of [Dr. Mirzaei's] feedback on [Mr. Asadi's] performance at midpoint and some follow up suggestions/actions."  *Id.*  The email stated, among other things:

> You received an informal letter of counseling during the first part of the evaluation period. Therefore, professionalism is a performance area on your standards requiring your attention and needing improvement.  Please note that the recurrence of unprofessional conduct on your part (i.e. involvement in verbal argument, use of an elevated tone in the workplace, etc.) can result in you receiving a needs improvement rating on your professionalism standards at the time of appraisals.

*Id.*

Mr. Asadi subsequently emailed Dr. Shevchenko requesting that the part of the midpoint review discussing informal counseling be removed.  Scharf Decl. Ex. P ("Shevchenko-Asadi Midpoint Review Email"), ECF No. 25-2.  Dr. Shevchenko responded that "if counseling was one of the points discussed, it was justly put into mid-point discussion notes."  *Id.*  Dr. Shevchenko again noted that the Counseling Memorandum would remain on file for a year.  *Id.*

### G.    First EEO Complaint

On October 23, 2018, Mr. Asadi conducted a pre-complaint intake interview with the Equal Employment Opportunity Office.  *See* Asadi Decl. Ex. T ("EEO Counselor's Report"), ECF No. 33-3.

Mr. Asadi subsequently filed a formal complaint with the Equal Employment Opportunity Office on November 29, 2018.  Scharf Decl. Ex. R. ("EEO Complaint"), ECF No. 25-2.  In the EEO Complaint, Mr. Asadi stated that he believed he was discriminated against because of his Iraqi national origin.  EEO Complaint § 9.  The EEO Complaint alleged that:

> Ms. Koayess and Dr. Kanbar are very close friends and they are both originally from Lebanon. Dr. Kanbar cited [sic] with Ms. Koayess and

> on 24 Aug 2018, Dr. Hiam Kanbar influenced Dr. Atousa Mirzaei . . .
> to issue [Mr. Asadi] an informal counseling for unacceptable conduct
> and behavior in the workplace.

*Id.* § 10.

### H.    FY2018-19 (2019) Performance Review and Award

On March 29, 2019, Mr. Asadi emailed Dr. Mirzaei asking if the "Informal Counseling of 24 Aug 2018" would be considered in his annual performance appraisal.  Scharf Decl. Ex. S ("Mirzaei-Asadi Email Chain (Mar. 29, 2019)"), ECF No. 25-2.  Dr. Mirzaei confirmed that in evaluating Mr. Asadi's performance she would "look at everything that has happened during the rating period[,] one being the informal counseling [he] received."  *Id.*

On June 1, 2019, Mr. Asadi received his Civilian Performance Plain, Progress Review and Appraisal for the period of April 1, 2018, to March 31, 2019.  Scharf Decl. Ex. T ("2019 Performance Review"), ECF No. 25-2.  Mr. Asadi received a "Summary Rating" of 4.2, which resulted in a "Rating of Record" of "Fully Successful."  *Id.* at 4.

That year, DLI provided the following performance awards: the top 2% of employees received a two-step pay increase; the next highest 8% received one-step pay increase; the next highest 35% received a $1,500 cash award or time-off equivalent; the next highest 20% received a $1,000 cash award or time-off equivalent; and the bottom 35% received a $750 cash award or time-off equivalent.  Scharf Decl. Ex. V ("2019 FPS Performance Award Procedures"), ECF No. 25-2.

Mr. Asadi received a $1,500 cash award.  Scharf Decl. Ex. CC ("Asadi EEO Decl. (Nov. 9, 2020)"), at p.5, ECF No. 25-2.

### I.    Rank Advancement Application

In 2020, Mr. Asadi applied for advancement to the rank of Associate Professor.  Scharf Decl. Ex. Z ("Assoc. Prof. Advancement Email"), ECF No. 25-2.  The selection process involves submitting a portfolio to the Directorate of Personnel & Logistics.  Scharf Decl. Ex. GG ("Donovan Decl."), at 3, ECF No. 25-2.  Each applicant's portfolio is assigned a score.  *Id.*  Scores are based independent portfolio reviews by members of a panel, prior performance ratings, level of education, contributions to the field, and a recommendation of the applicant's second-level

United States District Court
Northern District of California

1    supervisor. *Id.* at 3, 5. After each applicant's portfolio has been scored, the scores are sorted in

2    descending order. *Id.* The panel then reviews the list and recommends a cut line to the

3    Commandant, who selects the cut line. *Id.* Only applicants with scores above the cut line are

4    eligible for advancement. *See id.* Applicant names are not attached to the scores during the

5    selection of the cut line. *Id.*

6          On September 8, 2020, Mr. Asadi was informed that he was not selected for advancement.

7    Assoc. Prof. Advancement Email. Mr. Asadi's portfolio had scored below the cut line. Donovan

8    Decl., at 5; Scharf Decl. Ex. BB ("Rank Advancement Score Table"), ECF No. 25-2.

9          Mr. Asadi appealed the decision in October 2020, and his appeal was denied in December

10   2020. Scharf Decl. Ex. AA ("Appeal Ltr. & Resp."), ECF No. 25-2.

11         **J.    FY2019-20 (2020) Performance Review**

12         In June 2020, Mr. Asadi received his Performance Review for the period of April 2019

13   through March 2020. *See* Scharf Decl. Ex. W ("2020 Performance Review"), ECF No. 25-2. Mr.

14   Asadi received a Summary Rating of 4.6, which resulted in a Rating of Record of "Outstanding."

15   *Id.* at 4.

16         Like the previous year, the top 2% of performers were awarded a two-step pay increase,

17   the next top 8% of performers were awarded a one-step pay increase, the next top 35% were

18   awarded a $1,500 cash award or time-off equivalent, the next top 20% were awarded a $1,000

19   cash award or time-off equivalent, and the bottom 35% were awarded $750 or time-off equivalent.

20   Scharf Decl. Ex. EE ("Hausman Decl."), at 3, ECF No. 25-2.

21         Mr. Asadi again was awarded $1,500. *Id.* Of the employees at the school at which Mr.

22   Asadi worked, 124 received performance awards. *Id.* Thirty employees received a Summary

23   Rating of 4.6. *Id.* Of those 30 employees, 11 received a one-step increase and the other 19

24   received either $1,500 or 32 hours of time off. *Id.*

25         **K.    FY2020-21 (2021) Performance Award**

26         In July 2021, Mr. Asadi received a one-step pay increase. Scharf Decl. Ex. MM ("Fact-

27   Finding Conference"), at 32, 42, ECF No. 25-2.

28

**L.   Current Action**

Mr. Asadi brings claims against Defendant under Title VII of the Civil Rights Act of 1964 for alleged discrimination, retaliation, and creation of a hostile work environment.  Compl. ¶ 16-18, ECF No. 1.[1]  Defendant moves for summary judgment on all three claims.  Mot. 1.

## II.   LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *Id.* (citing *Celotex*, 477 U.S. at 325).  "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."  *Oracle*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 324).  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."  *City of Pomona*, 750 F.3d at 1049 (citing *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Id.* at 1049-50 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[1] Mr. Asadi's complaint has two headings for his claims: "First Claim Discrimination" and "Second Claim Retaliation."  Under his retaliation claim, Mr. Asadi alleges that he was subject to a hostile work environment.  The parties have based their arguments on three claims: (1) discrimination; (2) retaliation; and (3) hostile work environment.  The Court will follow the parties' lead.

United States District Court
Northern District of California

United States District Court
Northern District of California

III.   **DISCUSSION**

Defendant moves for summary judgment on all of Mr. Asadi's claims.  The Court addresses each claim in turn.

A.   **Discrimination**

"When responding to a summary judgment motion in a discrimination suit under . . . Title VII, the plaintiff may proceed by either using the *McDonnell Douglas* framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's contested conduct."  *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) (cleaned up and citations omitted).  "Under either approach, staving off a motion for summary judgment on disparate treatment claims under . . . Title VII entails three steps."  *Id.*  First, a plaintiff must make out a prima facie case of his discrimination claim.  *Id.*  Second, if the plaintiff makes out its prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action.  *Id.* at 723.  Third, if an employer articulates a legitimate, nondiscriminatory reason for the challenged action, the employee must show that the articulated reason is pretextual.  *Id.*

1.   **Prima Facie Case**

To survive a motion for summary judgment, a plaintiff must first make out a prima facie case of his discrimination claim.  *Opara*, 57 F.4th at 721.  "The plaintiff may do so either 'by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the employer."  *Id.* at 721-22 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)) (footnote omitted); *see also Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 n.4 (9th Cir. 2019) ("In opposing a motion for summary judgment, a plaintiff asserting a Title VII claim may either produce direct or circumstantial evidence that a discriminatory reason motivated the defendant's employment decision, or alternatively may establish a prima facie case under the *McDonnell Douglas* burden-shifting framework.").

Establishing a prima facie case via the *McDonnell Douglas* factors generally requires a

United States District Court
Northern District of California

1   plaintiff to show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he

2   was subject to an adverse employment action; and (4) similarly situated individuals outside his

3   protected class were treated more favorably." *Chuang v. Univ. of California Davis, Bd. of*

4   *Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

5       However, a plaintiff need not rely on the *McDonnell Douglas* factors. "[The] plaintiff may

6   alternatively offer direct or circumstantial evidence of discriminatory motive to establish [his]

7   prima facie case." *Opara*, 57 F.4th at 722 (citations omitted).

8       Defendant argues that Mr. Asadi cannot establish a prima facie case under the *McDonnell*

9   *Douglas* factors. Defendant does not dispute that Mr. Asadi is a member of a protected class and

10  was adequately performing his job. Defendant instead focuses on the third and fourth *McDonnell*

11  *Douglas* factors, arguing that Mr. Asadi cannot show that he suffered an adverse employment

12  action or that similarly situated individuals outside his protected class were treated more favorably

13  than he. Mot. 10-14. Mr. Asadi responds that *McDonnell Douglas* is not the only means of

14  proving discriminatory or retaliatory intent. Opp'n 11. But he nevertheless applies the

15  *McDonnell Douglass* factors to argue that he has established his prima facie case of

16  discrimination, Opp'n 13. He contends that he suffered adverse employment actions including the

17  issuance of the Counseling Memorandum, denial of his right to appeal the issuance of the

18  Counseling Memorandum, reduction in his ratings and evaluations, denial of his promotion to

19  Associate Professor in 2020, and denial of bonuses and step increases. Opp'n 13.

20                      **a.  Adverse Employment Action**

21      An employment action is adverse if it materially affects the compensation, terms,

22  conditions, or privileges of employment. *Chuang*, 225 F.3d at 1126. The Ninth Circuit interprets

23  the meaning of adverse employment action "broadly." *See Fonseca v. Sysco Food Servs. of*

24  *Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). For instance, the Ninth Circuit has found that

25  "undeserved performance ratings" are adverse employment actions. *Id.* It has also found that a

26  written warning may be an adverse employment action where an employer "publicizes all

27  discipline to all its employees." *See id.* Conversely, a "one-time verbal reprimand [that] had no

28  effect on [plaintiff's] job duties and was not placed in [plaintiff's] personnel file" does not

10

1    constitute an adverse employment action.  *See Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th

2    Cir. 2009).

3         Mr. Asadi asserts that he suffered the following adverse employment actions: "the 14

4    August memo, the denial of his right to appeal under the CBA, the poor performance review in

5    October 2018, the reduced year-end review and ratings, the reduced evaluations, and he was

6    denied a promotion to Associate Professor in 2020 and failure to grant bonuses and step

7    increases." Opp'n 13; *see* also Compl. ¶ 11, 12, 14, 17.  These actions break down into three

8    bases for Mr. Asadi's discrimination claim: (1) the issuance of counseling to Mr. Asadi for the

9    July 2018 Incident; (2) the issuance of reduced performance appraisals and insufficient

10   performance awards to Mr. Asadi in 2019, 2020, and 2021; and (3) the denial of Mr. Asadi's

11   application for rank advancement to Associate Professor in 2020.  The Court considers each basis

12   in turn.

13        Counseling:  On August 24, 2018, Dr. Mirzaei and Mr. Asadi met in Dr. Mirzaei's office

14   to discuss his involvement in the July 13, 2018, altercation.  *See* Counseling Mem.; Mirzaei Dep.

15   87:8-16; *see also* Opp'n 6.  Dr. Mirzaei presented Mr. Asadi with a memorandum with the subject

16   line "Counseling."  Mirzaei Dep. 87:8-16; *see also* Counseling Mem.; Opp'n 6.  In the

17   memorandum, Dr. Mirzaei states, "Based on my review of this matter, I find that this informal

18   counseling statement is the minimum action necessary to bring awareness to your unacceptable

19   conduct/behavior in the workplace that cannot be condoned or tolerated."  Counseling Mem. ¶ 1.

20   The Counseling Memorandum was placed in Mr. Asadi's file, and Mr. Asadi was later told that it

21   would remain there for one year.  *See* Shevchenko-Asadi Counseling Mem. Email.

22        Defendant argues that the issuance of the Counseling Memorandum was not an adverse

23   employment action because it was a one-time warning that was removed from Mr. Asadi's

24   personnel file after twelve months and it did not change Mr. Asadi's compensation, workplace

25   conditions, responsibilities, or status.  Mot. 12.  Although not entirely clear from the complaint,

26   Mr. Asadi appears to contend that the issuance of the Counseling Memorandum was an adverse

27   employment action because it led to subsequent adverse actions including "keeping his ratings

28   unfairly low and denying him rating and compensation increases and bonuses." Opp'n 15.  He

United States District Court
Northern District of California

11

1    also argues that Defendant's alleged failure to follow the CBA in issuing him the Counseling

2    Memorandum and later denying his appeal amounted to an adverse employment action.  Opp'n

3    13, 15, 17.

4          Viewing the evidence in the light most favorable to Mr. Asadi, the Court finds Mr. Asadi

5    has presented sufficient evidence that a jury could credit to show that the issuance of the

6    Counseling Memorandum was an adverse employment action.  Mr. Asadi has provided evidence

7    that the Counseling Memorandum was placed in his file and considered in his annual appraisal.

8    *See* Mirzaei-Asadi Email Chain (Mar. 29, 2019), at 1.  Mr. Asadi's second-level supervisor

9    acknowledged that counseling memoranda "may have a detrimental impact on the employee's

10   performance appraisal."  Asadi Decl. Ex. HH ("Shevchenko Witness Interview"), ECF No. 25-3.

11   She also acknowledged that an employee's performance appraisal ratings are considered when

12   determining the employee's performance awards.  Fact-Finding Conference, at 34:3-9; *see also*

13   Scharf Decl. Ex. E ("Shevchenko Decl."), at 4 ("I look at the rating, contributions and impact on

14   the mission of each faculty across the entire school and then decide"), ECF No. 25-2.  The year

15   Mr. Asadi received counseling, his performance appraisal rating was 4.2 out of 5 and he was not

16   awarded a step increase in his salary, although he was rated in the top 45% of employees and

17   received a $1,500 bonus.  2019 Performance Review, at p.4; Asadi EEO Decl. (Nov. 9, 2020), at

18   p.5; 2019 FPS Performance Award Procedures.  Taken together, this evidence raises a question of

19   fact about whether the Counseling Memorandum impacted Mr. Asadi's performance appraisal and

20   ultimately his compensation.  Mr. Asadi has thus met the minimal degree of proof necessary to

21   raise a contested issue of fact that the issuance of the Counseling Memorandum was an adverse

22   employment action.  *See White v. California*, No. 5:15-CV-03521-EJD, 2017 WL 1549497, at *6

23   (N.D. Cal. Apr. 28, 2017) (finding that placement of disciplinary letter in plaintiff's official

24   personnel file was an adverse action where plaintiff also stated that he had not received any

25   promotions or been capable of advancing his career), *aff'd*, 754 F. App'x 575 (9th Cir. 2019).

26         Performance Appraisals and Awards:  Mr. Asadi alleges that he received reduced

27   evaluations and was not granted the performance awards he deserved in 2019, 2020, and 2021.

28   *See* Compl. ¶¶ 14, 17.B.; *see also* Opp'n 8.  Defendant argues that Mr. Asadi's performance

12

1    evaluations and subsequent awards were not adverse actions because they were "largely positive"

2    and did not give rise to "any further negative employment action."  Mot. 12.  The Court first

3    considers the performance award Mr. Asadi received in 2019 and then addresses the subsequent

4    awards.

5         Viewing the evidence in the light most favorable Mr. Asadi, the Court finds that Mr. Asadi

6    has met his burden to present evidence that his 2019 performance appraisal and award were

7    adverse employment actions.  In 2019, Mr. Asadi was given a 4.2 out of 5 in his performance

8    appraisal and was not awarded a step increase in his salary.  2019 Performance Review; Asadi

9    EEO Decl. (Nov. 9, 2020)"), at p.5.  Mr. Asadi contends that this was due to the issuance of the

10   Counseling Memorandum.  *See* Opp'n 17.  Mr. Asadi has provided evidence to support this

11   contention.  *See* Mirzaei-Asadi Email Chain (Mar. 29, 2019), at 1 (confirming that the Counseling

12   Memorandum would be considered in Mr. Asadi's appraisal); Shevchenko Witness Interview

13   (confirming that counseling memoranda "may have a detrimental impact on the employee's

14   performance appraisal"); Fact-Finding Conference, at 34:3-9 (acknowledging that employee

15   ratings are considered in determining their performance award); Shevchenko Decl., at 4 (same).

16   As discussed above, Mr. Asadi has met his minimal burden at this stage to establish that the

17   Counseling Memorandum was an adverse employment action.  Because Mr. Asadi has provided

18   evidence that his 2019 performance award was reduced due to` the Counseling Memorandum, Mr.

19   Asadi has met his minimal burden to show that the performance award he received in 2019 was

20   itself an adverse employment action.

21        Mr. Asadi has not, however, provided any evidence that his 2020 and 2021 performance

22   appraisals and awards were undeserved and thus adverse employment actions.  *Cf. Fonseca*, 374

23   F.3d at 847 (noting that "undeserved" performance ratings may constitute an adverse employment

24   action).  Unlike Mr. Asadi's 2019 performance appraisal and award, there is no evidence that the

25   2020 and 2021 performance appraisals and awards were impacted by the Counseling

26   Memorandum.  The only evidence provided suggests that the Counseling Memorandum was no

27   longer in Mr. Asadi's file during these reviews.  *See* Shevchenko-Asadi Counseling Mem. Email

28   (explaining that the Counseling Memorandum was to remain in Mr. Asadi's file for one year).

United States District Court
Northern District of California

And Mr. Asadi has provided no other evidence that the performance appraisals and awards were undeservedly low.  Accordingly, Mr. Asadi has not met his minimal burden to establish that the awards were adverse employment actions.  *See George v. Barcroft*, No. 18-35551, 2022 WL 42473, at *2 (9th Cir. Jan. 5, 2022) (noting that "[a]lthough the prima facie stage of the *McDonnell-Douglas* framework is 'not onerous,'" a plaintiff bears the burden to produce "*some* evidence" (*citing Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (emphasis in original)).

Rank Advancement:  Finally, Mr. Asadi alleges and has provided evidence that he was "passed over for the rank of Associate Professor" in 2020.  Compl. ¶ 14; Opp'n 13; Assoc. Prof. Advancement Email; Appeal Ltr. & Resp.  Defendant does not dispute that a denial of a promotion is an adverse employment action.  Accordingly, the Court finds that Mr. Asadi has met his burden to present evidence that the denial of his application for rank advancement in 2020 was an adverse employment action.

Conclusion:  The Court finds that Mr. Asadi has met his burden to present evidence that the issuance of the Counseling Memorandum, the issuance of the allegedly reduced 2019 performance appraisal and award, and the denial of his application for rank advancement in 2020 were adverse employment actions.

Mr. Asadi has not, however, provided any evidence that his allegedly reduced performance awards in 2020 and 2021 were adverse employment actions.  Thus, the 2020 and 2021 performance awards do not support Mr. Asadi's prima facie case.

### b.  Similarly Situated Individuals

To satisfy the fourth element of the *McDonnell Douglas* prima facie test for discrimination, Mr. Asadi must establish that similarly situated individuals outside his protected class were treated more favorably.  *See Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021).  This showing requires Mr. Asadi to demonstrate that he is similarly situated to the more favorably treated employees "in all material respects."  *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).  The Court will again address each of the bases for Mr. Asadi's discrimination claim in turn.

Counseling: The parties dispute whether Mr. Asadi has demonstrated that similarly

1   situated individuals outside his protected class were treated more favorably in relation to the

2   counseling he received for the Incident.  Mr. Asadi contends that Ms. Koayess was a similarly

3   situated individual outside his protected class and that she was treated more favorably when she

4   "received no disciplinary action of any kind" despite being "undisputedly involved in the

5   altercation."  Opp'n 13.  Defendant argues that Mr. Asadi and Ms. Koayess are not similarly

6   situated because they had different supervisors, Ms. Koayess complained about Mr. Asadi shortly

7   after the altercation, Ms. Koayess's supervisor counseled her shortly after the altercation, and Ms.

8   Koayess had no prior or subsequent similar incidents.  Mot. 13-14; Reply 3.

9       The Ninth Circuit has held that employees who received disparate discipline were not

10   similarly situated where they were disciplined by different supervisors.  *Hargrow v. Fed. Express

11   Corp.*, No. 07-15623, 2009 WL 226039, at *1 (9th Cir. Jan. 30, 2009) ("Regarding the written

12   reprimands, the employees who allegedly received more favorable treatment than [plaintiff] were

13   not similarly situated to [plaintiff]. They were subject to different supervisors.").  But while "the

14   presence or absence of a shared supervisor might be relevant in some cases," it is error for a court

15   to impose a strict "same supervisor" requirement.  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151,

16   1157 (9th Cir. 2010).  Employees with different direct supervisors may be similarly situated where

17   the relevant disciplinary action was determined by a common decisionmaker.  *See id.* at 1157-58.

18       Here, Mr. Asadi and Ms. Koayess reported to different direct supervisors, but those

19   supervisors reported to the same person.  Mr. Asadi's first-line supervisor was Dr. Mirzaei.

20   Mirzaei Decl., at p.2.  Ms. Koayess's first-line supervisor was Dr. Tovar.  Tovar Decl. ¶ 3.  Both

21   Dr. Mirzaei and Dr. Tovar reported to Dr. Hiam Kanbar.  *See* Mirzaei Decl., at p.2; Scharf Decl.

22   Ex. Asadi Dep., at 49:6-11.  Thus, to determine whether Mr. Asadi and Ms. Koayess were

23   similarly situated the Court must determine which supervisors were the relevant decisionmakers.

24   *Compare Hargrow*, 2009 WL 226039, at *1, *with Hawn*, 615 F.3d at 1157-58.

25       Defendants have proffered undisputed evidence that Dr. Mirzaei and Dr. Tovar were the

26   relevant decisionmakers, and thus Mr. Asadi and Ms. Koayess were not similarly situated.  After

27   the altercation, an Investigative Officer conducted an "informal investigation" of the Incident and

28   drafted a memorandum providing recommendations.  *See* Noisette Mem.  Dr. Kanbar emailed an

United States District Court
Northern District of California

excerpt of the memorandum to Mr. Asadi's and Ms. Koayess's supervisors with a note to "[p]lease see the recommendations of the IO on the informal inquiry regarding Ms. Koayess and Mr. Asadi."  Kanbar Email.  The excerpt read:

> Recommendations: Based on my findings, I do not recommend to initiate a formal investigation (AR 15-6) at this time. I do recommend that both Mr. Al-Asadi and Ms. Koayess apologize to each other in person to avoid any chance of resentment that may resurface in the future. I also recommend that both Mr. Al-Asadi and Ms. Koayess receive verbal counseling from their supervisors on how to manage disputes and misunderstandings in the workplace.

*Id.*; *see also* Noisette Mem. ¶ 7.  There is no evidence, however, that Dr. Kanbar was involved in determining how to discipline Mr. Asadi or Ms. Koayess beyond forwarding this recommendation. Mr. Asadi argues without evidentiary support that Dr. Kanbar controlled these outcomes.  But the evidence shows that Dr. Mirzaei and Dr. Tovar were left to address their direct reports as they saw fit.  Dr. Mirzaei met with Mr. Asadi, discussed the altercation, and issued the Counseling Memorandum.  *See* Mirzaei Dep. 87:8-16; *see also* Opp'n 6.  Dr. Tovar did not issue further counseling to Ms. Koayess because they had previously discussed the incident.  Tovar Decl. ¶ 10. Thus, the evidence submitted shows that Mr. Asadi and Ms. Koayess were not similarly situated because their respective managers were free to decide on the appropriate discipline for the altercation.

Performance Appraisals and Awards:  Mr. Asadi provides no evidence regarding his 2019, 2020, and 2021 performance appraisals and awards that would suggest that similarly situated individuals outside his protected class were treated more favorably than he.  Mr. Asadi received $1,500 bonuses in 2019 and 2020 and a one-step salary increase in 2021.  Asadi EEO Decl. (Nov. 9, 2020), at p.5; Hausman Decl., at 3; Fact-Finding Conference, at 32, 42.  The evidence submitted confirms that there were employees who received larger awards than Mr. Asadi.  *See* 2019 FPS Performance Award Procedures (showing that the top 10% of employees received two- and one-step pay increases); Hausman Decl., at 3.  But Mr. Asadi has provided no evidence to suggest that any of these employees was similarly situated to him and outside his protected class.  Mr. Asadi has therefore failed to establish his prima facie case of discrimination based on his 2019, 2020, and 2021 performance awards.  *See Thomas v. Spencer*, No. CV 15-00121 RLP, 2018 WL

1  3638080, at *7 (D. Haw. July 30, 2018) (granting summary judgment for defendant where

2  "[p]laintiff assert[ed] that other employees received larger bonuses, but did not provide any

3  evidence that these employees were similarly situated to him") *aff'd sub nom. Thomas v. Harker*,

4  No. 18-16640, 2021 WL 2910948 (9th Cir. July 12, 2021).

5      <u>Rank Advancement</u>:  Mr. Asadi likewise provides no evidence regarding the denial of his

6  2020 application for rank advancement that would suggest that similarly situated individuals

7  outside his protected class were treated more favorably than he.  Mr. Asadi has provided no

8  evidence about which employees were promoted.  This failure to provide evidence of comparators

9  is fatal to Mr. Asadi's prima facie case.  *See Hutchinson v. Seagate Tech.*, 147 F. App'x 647, 648

10  (9th Cir. 2005) (holding that plaintiff failed to establish prima facie case arising out of failure to

11  promote where she failed to provide evidence that employee who was promoted was similarly

12  situated to her).

13      <u>Conclusion</u>:  In sum, Mr. Asadi has not provided evidence that similarly situated

14  individuals were treated more favorably with regard to any of the alleged adverse employment

15  actions.

16                        *        *        *

17      In light of the foregoing, the Court finds that Mr. Asadi has failed to make out a prima

18  facie case of discrimination.  Mr. Asadi has failed to make out his prima facie case based on any

19  of the purported adverse employment actions because he has failed to identify evidence showing

20  that similarly situated individuals were treated more favorably.  Moreover, to the extent Mr.

21  Asadi's claim is based on the 2020 and 2021 performance awards, the claim fails for the additional

22  reason that Mr. Asadi has not identified evidence suggesting that these awards were, in fact,

23  adverse employment actions.  Accordingly, Defendant's motion for summary judgment on Mr.

24  Asadi's discrimination claim is GRANTED.

25      Even assuming Mr. Asadi has met his prima facie burden, the Court will evaluate the

26  remaining two steps of the *McDonnell Douglas* framework to determine whether they provide an

27  independent basis to grant Defendant's motion.

28

United States District Court
Northern District of California

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### 2.  Legitimate, Non-Discriminatory Reasons

Next, the Court considers whether Defendant has met her "burden of production . . . to articulate some legitimate, nondiscriminatory reason for the challenged action." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009).  "This burden is one of production, not persuasion ... [and] involve[s] no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Counseling:  The Court finds that Defendant has met her burden to introduce evidence of legitimate, non-discriminatory reasons for issuing Mr. Asadi counseling.  Defendant has introduced evidence that Mr. Asadi's supervisors received a statement from Ms. Koayess that Mr. Asadi had made her feel unsafe during the Incident.  *See* Koayess Statement ¶ 8.  A third-party Investigative Officer who investigated the Incident recommended verbal counseling for Mr. Asadi. Noisette Mem. ¶ 7.  In her deposition, Dr. Mirzaei explained that she issued counseling to Mr. Asadi based on this recommendation and drafted the Counseling Memorandum to document what was discussed.  Mirzaei Dep. 86:1-87:16.  Dr. Mirzaei also stated in emails that she issued the counseling because "Mr. Al Asadi acted unprofessionally during an academic meeting."  Scharf Decl. Ex. L ("Mizaei Email (Sept. 18, 2018)"), ECF No. 25-2.  Defendant has thus introduced evidence that Mr. Asadi was issued counseling for the legitimate, non-discriminatory reason of addressing conduct that his supervisors deemed to be unprofessional.

 Performance Appraisals and Awards:  The Court also finds that Defendant has met her burden to introduce evidence of legitimate, non-discriminatory reasons for Mr. Asadi's performance appraisals and awards.  Mr. Asadi scored a 4.2, 4.6, and 4.6 out of 5 in 2019, 2020, and 2021 respectively.  2019 Performance Review, at 4; 2020 Performance Review, at 4; 2021 Performance Review, at 4.  Each review contained a detailed explanation of the reasons for Mr. Asadi's scores—none of which Defendant contends reflected discriminatory criteria.  *See* 2019 Performance Review, at 3; 2020 Performance Review, at 3; 2021 Performance Review, at 3.  Mr. Asadi received a $1,500 bonus in 2019 and 2020 and received a step increase in his salary in 2021. Asadi EEO Decl. (Nov. 9, 2020), at p.5; Hausman Decl. 3; Fact-Finding Conference 42.  Dr.

Shevchenko, the person responsible for proposing these awards, stated that she determined awards for all faculty and that the awards were based on the non-discriminatory criteria of "rating," "contributions," and "impact."  Shevchenko Decl., at p.4; *see also* Fact-Finding Conference 44. Defendant has therefore provided met her burden to provide evidence of legitimate, non-discriminatory reasons for Mr. Asadi's performance appraisal scores and performance awards. *Cf. Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.").

Rank Advancement:  The Court finds that Defendant has met her burden to introduce evidence of a legitimate, non-discriminatory reason for the alleged adverse action.   Defendant introduced evidence that each applicant who applied for rank advancement was given a score based on a review of the applicant's materials by members of a panel, prior performance ratings, level of education, contributions to the field, and a recommendation by the applicant's second-level supervisor.  Donovan Decl. at 3, 5.  Defendant further introduced evidence that only applicants with scores above a certain cut line were eligible for promotion.  *See id.* at 3.  Mr. Asadi scored below the cut line when he applied for rank advancement.  *See* Rank Advancement Table, at DEF01772, DEF01775.  Thus, Defendant introduced evidence that Ms. Asadi was not selected for rank advancement for the non-discriminatory reason that he did not perform as well as employees who were selected.  Defendant has thus met her burden to produce evidence that she had a legitimate, non-discriminatory reason for not selecting Mr. Asadi for rank advancement to Associate Professor.

### 3. Pretext

"[O]nce an employer articulates some legitimate, nondiscriminatory reason for the challenged action, the employee must show that the articulated reason is pretextual."  *Opara*, 57 F.4th at 723.  "[A] plaintiff can prove pretext in multiple ways, either: (1) directly, by showing that unlawful discrimination more likely [than not] motivated the employer; (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or via a combination of the[se] two kinds of evidence."

1   *Id.* (internal quotation marks omitted).

2        When a plaintiff presents direct evidence that the proffered explanation is a pretext for

3   discrimination, "very little evidence" is required to avoid summary judgment.  *Boeing,* 577 F.3d at

4   1049.  In contrast, when a plaintiff relies on circumstantial evidence to show pretext, "'that

5   evidence must be specific and substantial to defeat the employer's motion for summary

6   judgment.'" *Id.* (quoting *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir.

7   2005)).  And "where 'abundant and uncontroverted independent evidence' suggests that 'no

8   discrimination . . . occurred,' plaintiff's 'creat[ion of] only a weak issue of fact as to whether the

9   employer's reason was untrue' will not suffice."  *Opara*, 57 F.4th at 724 (quoting *Reeves*, 530 U.S.

10   at 148).

11        <u>Counseling</u>:  Mr. Asadi argues two theories to support his contention that Defendant's

12   proffered non-discriminatory reasons for issuing counseling were pretextual.  First, Mr. Asadi

13   argues that the evidence shows that his supervisors were being directed to discriminate against

14   him by their supervisor, Dr. Kanbar, a white woman of Lebanese descent.  Opp'n 16-17.  Second,

15   Mr. Asadi argues that the evidence shows that his supervisors failed to follow the CBA and Army

16   regulations in issuing him counseling.  Opp'n 17-18.  Neither theory raises a fact dispute that

17   precludes summary judgment.

18        Mr. Asadi's first theory fails because there is no evidence that Dr. Kanbar directed Mr.

19   Asadi's supervisors to discriminate against him or otherwise harbored discriminatory views

20   toward him.  To the contrary, the only evidence of Dr. Kanbar's involvement in the decision to

21   issue counseling to Mr. Asadi shows that she did nothing more than forward the recommendations

22   of the Investigative Officer to Mr. Asadi's and Ms. Koayess's supervisors.  *See* Kanbar Email.

23   Those recommendations proposed the same disciplinary action for both Mr. Asadi and Ms.

24   Koayess.  *See id.*  Thus, the only evidence before the Court shows that Dr. Kanbar proposed the

25   same treatment for Mr. Asadi and Ms. Koayess—a person outside of Mr. Asadi's protected class.

26   To the extent Mr. Asadi argues that discriminatory motive can be inferred from evidence that Dr.

27   Kanbar is of a different race or national origin than Mr. Asadi, the Court joins district courts

28   around the country holding that such evidence is not sufficient by itself to raise a triable issue of

United States District Court
Northern District of California

1   fact regarding discrimination.  *See Pinder v. Emp. Dev. Dep't*, 227 F. Supp. 3d 1123, 1141 (E.D.

2   Cal. 2017) (collecting cases).

3          The Court turns to Mr. Asadi's second theory— that his supervisors' purported failure to

4   follow the CBA and Army regulations in issuing him counseling demonstrates pretext.   "A

5   plaintiff may . . . raise a triable issue of pretext through evidence that an employer's deviation

6   from established policy or practice worked to her disadvantage."  *Earl v. Nielsen Media Rsch.,*

7   *Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011).  "But such a deviation must be considered in context

8   and may not always be sufficient to infer a discriminatory motive."  *Merrick v. Hilton Worldwide,*

9   *Inc.*, 867 F.3d 1139, 1149 (9th Cir. 2017).

10          As an initial matter, Mr. Asadi has not provided evidence that his supervisors deviated

11   from the CBA or Army regulations.  Mr. Asadi's argument appears to be that neither the CBA nor

12   the Army regulations include the exact term "informal counseling," and therefore his supervisors

13   violated policy when they issued what they referred to as "informal counseling."  *See* Opp'n 4-5,

14   17.  This argument is specious.  The CBA defines "counseling" as "direction to an employee from

15   a manager that is used as a constructive means to encourage an employee to improve his or her

16   conduct" and specifies that such counseling may be "may be oral[] or reduced to writing."  CBA

17   art. 32 § 2.E.  The CBA specifies that "oral counseling or written warnings will ordinarily be the

18   first step taken by management to correct an employee's conduct."  CBA art. 32 § 7.  Thus

19   "counseling" is a remedial measure anticipated by the CBA.  That Mr. Asadi's supervisors

20   referred to the counseling he received as "informal counseling" as opposed to just "counseling" is

21   not evidence that they deviated from the CBA.

22          Relatedly, Mr. Asadi argues that his supervisors deviated from the CBA when they denied

23   his right to appeal the issuance of the Counseling Memorandum.  Mr. Asadi's argument hinges on

24   his contention that the CBA grants the right to appeal "written reprimands" under section 8 of

25   article 32 of the CBA.  *See* Opp'n 5.  But this argument fails because the only evidence before the

26   Court shows that Mr. Asadi was issued "counseling" under section 7 of article 32 of the CBA, not

27   a "reprimand" under section 8.  Dr. Mirzaei's memorandum documenting the counseling had the

28   subject line "Counseling."  Counseling Mem.  And Dr. Mirzaie and Dr. Shevchenko use the term

1    "counseling" throughout their discussions with Mr. Asadi.  *See* Mirzaei Rebuttal Response Email;

2    Shevchenko-Asadi Counseling Mem. Email; Mirzae-Asadi Midpoint Review Email; Shevchenko-

3    Asadi Midpoint Review Email; Mirzaei-Asadi Email Chain (Mar. 29, 2019).  Dr. Mirzaei

4    explained to Mr. Asadi that the counseling was not "formal discipline."  *See* Mirzaei Rebuttal

5    Response Email.  This is consistent with the CBA, which specifies that a reprimand is a

6    "disciplinary action" while counseling is not.  CBA art. 32 §§ 2.A, 7.  Mr. Asadi provides no

7    evidence in response.  Accordingly, Mr. Asadi has failed provide to raise a triable issue of fact

8    about whether his supervisors deviated from the CBA.

9         Mr. Asadi's theory also fails because, to the extent Mr. Asadi contends his supervisors

10   deviated from the CBA and Army regulations, he has provided no evidence concerning whether

11   they similarly deviated with employees outside of his protected class.  A plaintiff fails to raise a

12   triable issue of pretext based on a deviation from procedures where "plaintiff proffers no evidence

13   concerning whether [his employer] followed its policies and procedures with respect to similarly

14   situated [employees outside of plaintiff's protected class]."  *See Blair v. Shinseki*, No. 2:13-CV-

15   07478-CAS-FFMx, 2015 WL 12743841, at *14 (C.D. Cal. Apr. 29, 2015), *aff'd sub nom. Blair v.*

16   *Shulkin*, 685 F. App'x 587 (9th Cir. 2017).  Here, the only evidence before the Court concerning

17   Mr. Asadi's supervisors' practices is Dr. Mirzaei's deposition testimony that "informal

18   counseling" is a "very common practice at the DLI."  Mirzaei Dep. 58:5-6.  Mr. Asadi has thus

19   fallen well short of identifying "specific and substantial" evidence of pretext.  *See Boeing,* 577

20   F.3d at 1049.

21        In sum, Mr. Asadi has provided no evidence that Defendant's proffered reasons for issuing

22   him counseling were pretextual and has thus failed to raise a triable issue of pretext concerning the

23   counseling.

24        <u>Performance Appraisals and Awards/Rank Advancement</u>:  Mr. Asadi offers no evidence

25   to rebut Defendant's proffered non-discriminatory reasons for Mr. Asadi's performance appraisal

26   scores, performance awards, or the denial of his application for rank advancement.  Instead, Mr.

27   Asadi directs all his arguments about pretext the counseling he received and his supervisors'

28   purported failures to comply with the CBA.  *See* Opp'n 15-18.  Mr. Asadi has therefore failed to

raise a triable issue of pretext concerning the performance appraisals, performance awards, and denial of rank advancement. *See Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641, 643 (9th Cir. 2014) (affirming grant of summary judgment on Title VII claim where "there was a failure of proof from Appellants on the key issue of pretext.").

*   *   *

The Court finds that Mr. Asadi has failed to provide evidence that raises a triable issue of fact about whether Defendant's proffered non-discriminatory reasons for the purported adverse actions are pretextual. Thus, in addition to Mr. Asadi's failure to make out a prima facie claim, Defendant's motions to dismiss Mr. Asadi's discrimination claim is GRANTED for this independent reason.

### B.    Retaliation

"Title VII prohibits retaliation against an employee for opposing unlawful discrimination." *McGinest*, 360 F.3d at 1124 (citing 42 U.S.C. § 2000e-3(a)). "Like discrimination, retaliation may be shown using the *McDonnell Douglas* burden-shifting framework." *Id.* To establish a prima facie case of retaliation, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). If the plaintiff provides sufficient evidence to show a prima facie case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). If the employer sets forth such a reason, the plaintiff bears the ultimate burden of submitting evidence indicating that the employer's proffered reason is merely a pretext for a retaliatory motive. *See id.*

Mr. Asadi alleges six acts of retaliation:

- Alleged Retaliatory Act 1:  From October 15 through October 23, 2018, Dr. Shevchenko did not respond to Mr. Asadi's request to remove the reference to informal counseling from his midpoint performance review. Compl. ¶ 18.A.

- Alleged Retaliatory Act 2:  From September 17 through October 23, 2018, Dr. Mirzaei did not respond to Mr. Asadi's request for a copy of the Noisette Memorandum and stated that

it did not exist.  Compl. ¶ 18.B.

- Alleged Retaliatory Act 3:  Informal counseling was referenced in Mr. Asadi's midpoint review despite Dr. Mirzaei's assurance to Mr. Asadi on October 10, 2018, that the Counseling Memorandum would be in his personnel file and no one except Mr. Asadi and Dr. Mirzaei would see it.  Compl. ¶ 18.C.

- Alleged Retaliatory Act 4:  On September 24, 2018, Dr. Shevchenko sent Mr. Asadi an email telling him not to raise his voice and index finger to anyone in the workplace without proof that he had done so.  Compl. ¶ 18.D.

- Alleged Retaliatory Act 5: On July 10, 2020, Mr. Asadi was not placed among the top 10% of employees and thus did not receive a one- or two-step step increase in his pay as a performance award for 2019-2020.  Compl. ¶ 18.E.

- Alleged Retaliatory Act 6:  On December 9, 2020, Mr. Asadi was not selected for advancement to the rank Associate Professor.  Compl. ¶ 18.E.[2]

Defendant argues that Mr. Asadi cannot establish a prima facie case based on Alleged Retaliatory Acts 1 through 4 because there is no evidence of causation.  Defendant argues that she is entitled to summary judgment because there are legitimate, non-retaliatory reasons for the all the Alleged Retaliatory Acts and Mr. Asadi has no evidence of pretext.

### 1.  Alleged Retaliatory Acts 1-4

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).  Causation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  But "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."  *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)

---

[2] Mr. Asadi's complaint as two paragraphs labeled "18.E."  This citation refers to the second of those two paragraphs.

United States District Court
Northern District of California

1   (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)).

2       Defendant argues that Mr. Asadi cannot show a causal link between his protected activity

3   and Alleged Retaliatory Acts 1 through 4 because there is no evidence the relevant actors knew

4   about the protected activity when they committed the acts.  Mot. 22-23.  Each Alleged Retaliatory

5   Act was committed on or before October 23, 2018, either by Dr. Mirzaei or Dr. Shevchenko.  Dr.

6   Mirzaei has stated that she first learned of Mr. Asadi's protected activity in November 2018.

7   Mirzaei Decl., at p.3.  Dr. Shevchenko has stated that she learned of Mr. Asadi's protected activity

8   in February 2019.  Shevchenko Decl., at p.3.  These statements are evidence that neither Dr.

9   Mirzaei nor Dr. Shevchenko knew of Mr. Asadi's protected activity when they committed Alleged

10  Retaliatory Acts 1 through 4.

11      Mr. Asadi does not come forth with any evidence in response from which a reasonable jury

12  could render a verdict in his favor.  *See Oracle*, 627 F.3d at 387.  Mr. Asadi appears to argue that

13  he can demonstrate the requisite causal connection because he made his "initial complaint of

14  discrimination" to Skip Jonson, Deputy DLIFLC Inspector General, in September 2018 and "[t]he

15  complaint to DLI's EEO office was first made in early October 2018."  Opp'n 18.  This argument

16  fails because it says nothing about why making such complaints would put Dr. Mirzaei or Dr.

17  Shevchenko—the two people alleged to have committed the retaliatory acts—on notice of the

18  protected activity.  *See Ujhelyi v. Vilsack*, No. C 12-04282 JSW, 2014 WL 4983550, at *10 (N.D.

19  Cal. Oct. 6, 2014) (holding that plaintiff had failed to show disputed facts on causation where

20  supervisors denied that they were aware of protected activity and plaintiff had not submitted

21  evidence to rebut the denials), *aff'd*, 695 F. App'x 285 (9th Cir. 2017); *Meaux v. Nw. Airlines, Inc.*,

22  718 F. Supp. 2d 1081, 1092 (N.D. Cal. 2010) ("Plaintiff presents no evidence that any

23  decisionmaker in Plaintiff's 2003 and 2004 discipline had knowledge of his 1986 Department of

24  Human Rights claim. Therefore, no cause of action for retaliation can be based on this protected

25  activity."), *aff'd*, 490 F. App'x 58 (9th Cir. 2012).  Mr. Asadi's argument that there "was not a

26  long delay" between his filing of the EEO complaint and his first annual performance review fails

27  for the same reason.  *See, e.g.*, *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936 (D. Ariz. 2006)

28  (no causation despite temporal proximity between EEOC complaint and adverse employment

United States District Court
Northern District of California

1    actions because plaintiff failed to produce evidence that defendant knew of the charge), *aff'd*, 302

2    F. App'x 591 (9th Cir. 2008).

3        Accordingly, the Court thus finds that Alleged Retaliatory Acts 1 through 4 do not provide

4    a basis for Mr. Asadi's retaliation claim because Defendant has identified an absence of evidence

5    that the acts were caused by a desire to retaliate, and Mr. Asadi has failed to respond with

6    evidence from which a reasonable jury could render a verdict in his favor.

7        ### 2.   Alleged Retaliatory Acts 5 and 6

8        Defendant does not dispute that Mr. Asadi can make out a prima facie case of retaliation

9    based on Alleged Retaliatory Acts 5 and 6.  Defendant argues, however, that there are legitimate,

10   non-retaliatory reasons for both acts and that Mr. Asadi has no evidence that these reasons are

11   pretextual.[3]

12       #### a.   Legitimate, Non-Retaliatory Reasons

13       Where a plaintiff establishes his prima facie case, the burden shifts to the defendant "to

14   articulate a legitimate, non-retaliatory explanation for the adverse employment action." *Winarto*,

15   274 F.3d at 1284.  This is solely a burden of production; "the defendant need not persuade the

16   court that it was actually motivated by the proffered reasons."  *St. Mary's*, 509 U.S. at 510 (1993).

17   Defendant has met her burden here.

18       Alleged Retaliatory Act 5: Mr. Asadi alleges that Defendant retaliated against him on July

19   10, 2020, when he was not ranked among the 10% of employees and thus not given a one- or two-

20   step pay increase that year.  *See* Compl. ¶ 18.E.

21       Defendant asserts that Mr. Asadi was not selected for a step increase in 2020 for the non-

22   retaliatory reason that the limited number of step increases were given to more qualified

23   employees.  Mot. 15-16, 21.  Defendant cites the following evidence in support of her assertion.

24   In 2020, Mr. Asadi received a score of 4.6 out of 5 on his performance review.  2020 Performance

25   Review, at p.5.  Dr. Shevchenko, the person responsible for proposing Mr. Asadi's award, stated

26

27   ───────────────
[3] Defendant also argues that she has legitimate, non-retaliatory reasons for Alleged Retaliatory
     Acts 1 through 4.  Because the Court has held that Mr. Asadi has not shown that Alleged
28   Retaliatory Acts 1 through 4 support a prima facie case of discrimination, the Court does not reach
     whether Defendant has demonstrated legitimate, non-retaliatory reasons for these acts.

United States District Court
Northern District of California

that the school "had more faculty rated overall 4.6 then [*sic*] the number of the step increases available for the school."  Shevchenko Decl., at p.4.  She said she reviewed each faculty member's "rating," "contributions," and "impact" and then decided who would receive each award.  *Id.* Finally, Dr. Shevchenko stated that she did not consider Mr. Asadi's race, national origin, or prior EEO activity in deciding his award.  *Id.* at p.5.

This evidence satisfies Defendant's burden of production because, taken as true, it would permit the conclusion that there was a nondiscriminatory reason for the denial of the step increase. *See Hicks*, 509 U.S. at 509.  Dr. Shevchenko's statement that she considered rating, contribution, and impact suggests that Mr. Asadi was not awarded a step increase because other faculty performed better than him in these categories.  Moreover, Dr. Shevchenko expressly stated that she did not consider Mr. Asadi's prior EEO activity in deciding his award.  Considering this evidence together, the Court finds that Defendant has met her burden to produce evidence that there was a legitimate, non-retaliatory reason for not awarding Mr. Asadi a step increase.

Alleged Retaliatory Act 6:  Mr. Asadi alleges that Defendant retaliated against him on December 9, 2020, when he was not promoted to the rank of Associate Professor.  Compl. ¶ 18.F.

The Court again finds that Defendant has met her burden to introduce evidence of a legitimate, nonretaliatory reason for the alleged adverse action.   Defendant asserts that Mr. Asadi was not selected for the rank of Associate Professor for the non-retaliatory reason that he was less qualified than the candidates who were selected.  Mot. 21.  Defendant cites the following evidence in support of her assertion.  Each applicant who applied for rank advancement was given a score based on a review of the applicant's materials by members of a panel, prior performance ratings, level of education, contributions to the field, and a recommendation by the applicant's second-level supervisor.  Donovan Decl. at 3, 5.  The applicants' scores were then arranged in descending order, and only applicants with scores above a certain cut line were eligible for promotion.  *See id.* at 3.  Mr. Asadi scored well below the cut line when he applied for rank advancement.  *See* Rank Advancement Table, at DEF01772, DEF01775 (showing the cutline set at 248.85 and showing Mr. Asadi's score at 192.85).  Taken together, this evidence would permit the conclusion that Mr. Asadi was not selected for rank advancement for the legitimate reason that the promotion was

1    given to candidates who were more qualified because they scored higher than he did.  *See Miller v.*

2    *AmeriGas Partners, L.P.*, No. 12-cv-2974-KJM, 2014 WL 1096705, at *9 (E.D. Cal. Mar. 19,

3    2014) (finding that defendant satisfied burden to articulate non-retaliatory reason for not

4    promoting employee where defendant offered evidence that it chose a different employee for the

5    promotion based on that employee's higher scores in the interview process).

6         Defendant has thus met her burden to produce evidence that she had a legitimate, non-

7    retaliatory reason for not selecting Mr. Asadi for rank advancement to Associate Professor.

8                          **b.  Pretext**

9         In the face of Defendant's showing, Mr. Asadi must demonstrate that the purported

10   nonretaliatory reasons for Alleged Retaliatory Acts 5 and 6 were "merely a pretext for

11   impermissible retaliation."  *See Winarto*, 274 F.3d at 1284.  The "critical" issue at the pretext stage

12   is whether the plaintiff produces "sufficient evidence to raise a triable issue of fact as to whether

13   the reason proffered by [employer] for [the adverse action] was a pretext for unlawful retaliation."

14   *Bergene v. Salt River Project Agr. Imp. and Power Dist.,* 272 F.3d 1136, 1141 (9th Cir. 2001).  A

15   plaintiff may rely on direct or circumstantial evidence of pretext to avoid summary judgment.  *See*

16   *Manatt v. Bank of America, N.A.,* 339 F.3d 792, 801 (9th Cir.2003).  But if the plaintiff relies on

17   circumstantial evidence, the evidence must be "specific and substantial."  *See id.* ("Because

18   [plaintiff] failed to introduce any direct or specific and substantial circumstantial evidence of

19   pretext, summary judgment for the [defendant] must be affirmed.").  A "plaintiff cannot create a

20   genuine issue of pretext to survive a motion for summary judgment by relying solely on

21   unsupported speculations and allegations of discriminatory intent."  *Crawford v. MCI Worldcom*

22   *Communications, Inc.,* 167 F. Supp. 2d 1128, 1135 (S.D. Cal. 2001).

23        Here, Mr. Asadi cites no evidence that would raise a triable issue of fact about whether

24   Defendant's nonretaliatory reasons for not giving him his desired performance award (Alleged

25   Retaliatory Act 5) and not promoting him (Alleged Retaliatory Act 6) were pretextual.  As noted

26   above, Defendant provided evidence that the relevant awards and promotion went to more

27   qualified employees.  Mr. Asadi does not address this at all.  Instead, Mr. Asadi relies on conduct

28   that bears no apparent relation to Defendant's non-discriminatory reasons as "evidence of

United States District Court
Northern District of California

discrimination and pretext." *See* Opp'n 15-18.  Specifically, Mr. Asadi contends that Defendant engaged in the following conduct: (1) treating him and Ms. Koayess differently following the Incident; (2) not following Army regulations or the CBA in issuing him informal counseling; and (3) not following Army regulations or the CBA in conducting their investigation following the Incident.  *Id.*  Even assuming Mr. Asadi had supplied evidence to show that Defendant did engage in this conduct, it is not clear how the conduct is evidence that Defendant's reasons for not giving him his desired award or not promoting him were pretextual.

Accordingly, the Court finds Mr. Asadi has failed to present evidence that Defendant's nonretaliatory reasons for not giving him the performance award he desired and not promoting him in 2020 were pretextual.  The Court therefore finds that Mr. Asadi has not demonstrated the existence of a triable issue of fact that he has a Title VII retaliation claim based on Alleged Retaliatory Acts 5 and 6.

*        *        *

In light of the foregoing, the Court finds that Defendant is entitled to summary judgment on Mr. Asadi's retaliation claim.  Mr. Asadi bases his claim on six Alleged Retaliatory Acts.  As to Alleged Retaliatory Acts 1 through 4, Defendant has shown that there is an absence of evidence that any of the acts were caused by a desire to retaliate against Mr. Asadi for his protected activity. As to Alleged Retaliatory Acts 5 and 6, Defendant has provided evidence that the acts were for legitimate, nonretaliatory reasons, and Mr. Asadi has not submitted any evidence from which a jury could conclude that these reasons are pretextual.  Accordingly, Defendant's motion for summary judgment regarding Mr. Asadi's retaliation claim is GRANTED.

### C. Hostile Work Environment

Within his allegations for his retaliation claim, Mr. Asadi alleges that he was "subjected to a hostile work environment on the basis of national origin (Iraq), religion, and race."  Compl. ¶ 18. Mr. Asadi relies on Alleged Retaliatory Acts 1 through 6 as the basis for his assertion that he was subject to a hostile work environment.  *Id.*

To establish a prima facie case for a hostile-work environment claim, Mr. Asadi must raise a triable issue of fact as to whether (1) Defendant subjected him to verbal or physical conduct

United States District Court
Northern District of California

based on his race, religion, or national origin; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment  *See Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Defendant argues that Mr. Asadi cannot establish a hostile work environment claim because "[e]ach of the interactions underlying Plaintiff's discriminatory harassment claims were isolated, not clearly based on either race national origin, religion, color, or retaliation, and had no effect on Plaintiff's work conditions." Mot. 24.  Mr. Asadi responds that "the ongoing and repeated pressure from management described in his complaints created a hostile work environment." Opp'n 22.

The Court finds that Mr. Asadi has failed to raise a triable issue of fact concerning his hostile work environment claim.  The first four acts upon which Mr. Asadi bases his hostile work environment claim concern the discipline he received for his alleged involvement in the Incident. *See* Compl. ¶¶ 18.A.-D.  As explained above in Section III.A., Mr. Asadi contends that Defendant discriminated against him by subjecting him to harsher discipline than Ms. Koayess, a white woman of Lebanese national origin, despite her involvement in the altercation.  However, as the Court explained above, Mr. Asadi has failed to produce evidence to support a prima facie case of discrimination because the evidence shows that he and Ms. Koayess were subject to the disciplinary decisions of different decisionmakers and thus were not similarly situated.   Thus, to the extent Mr. Asadi relies on the discipline he received for his involvement in the incident, this discipline cannot provide a basis for his hostile work environment claim because there is no evidence that the discipline was based on his race, religion, or national origin.  *Cf. Surrell*, 518 F.3d at 1108 (affirming summary judgment on hostile work environment claim where plaintiff had "present[ed] no evidence that [her supervisor's] comments were based on race.").

The remaining two acts also do not provide a basis for Mr. Asadi's hostile work environment claim because Mr. Asadi has not raised a triable issue of fact about whether those acts were based on his race, religion, or national origin.  The remaining two acts upon which Mr. Asadi bases his hostile work environment claim are Defendant's decisions in 2020 not to award

Mr. Asadi a step increase in his salary and not to advance him to the rank Associate Professor. *See* Compl. ¶¶ 18.E-E.[4]  As explained above in Section III.B.2.a, Defendant has provided evidence that Mr. Asadi did not receive the performance award he desired or the advancement for a legitimate reason—because there were more qualified candidates.  And as explained above in Section III.B.2.b, Mr. Asadi has presented no evidence that this reason was pretextual.  Thus, these acts do not create a triable issue of fact as to whether Defendant created a hostile work environment.  *See Hollins v. Wilkie*, No. 19-CV-2201 DMS (JLB), 2021 WL 1906462, at *8 (S.D. Cal. May 12, 2021) (finding no triable issue of fact as to hostile work environment claim where "Defendant provided a legitimate, non-discriminatory reason for its actions . . . and Plaintiff failed to show this reason was pretextual").

In sum, Defendant has shown a lack of evidence that any of the alleged acts underlying Mr. Asadi's hostile work environment claim were based on race, religion, or national origin, and Mr. Asadi has designated no facts demonstrating the existence of genuine issues for trial. Accordingly, Defendant's motion for summary judgment on Mr. Asadi's hostile work environment claim is GRANTED.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Dated:  July 19, 2023

_____
BETH LABSON FREEMAN
United States District Judge

---

[4] The relevant paragraphs are both numbered 18.E.

United States District Court
Northern District of California